UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
Vincent Giordano,                                           MEMORANDUM
                     Plaintiff,                        & ORDER


        -against-

                                                                   04 CV 4228 (SLT) (JMA)

Jo Anne B. Barnhart,
Commissioner of Social Security,

                     Defendant.
--------------------------------------------------X
TOWNES, U.S.D.J.

      Plaintiff Vincent Giordano ("Plaintiff" or "Giordano") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner") that Plaintiff's Social Security Income ("SSI") benefits were correctly reduced by one-third because Plaintiff was receiving in-kind support and maintenance from his family. The parties submitted cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner then withdrew her motion and filed a motion to remand. For the reasons set forth below, the case is reversed and remanded to the Commissioner for further proceedings.

I.      Facts and Procedural History

      Plaintiff suffers from depression and mental illness. He filed several applications for SSI benefits and was found eligible based on an application filed July 24, 1992. (Tr. 97-109.)[1] Thereafter, Plaintiff's earlier applications were reopened as a result of the Second Circuit's

---

[1] Citations to "Tr." refer to the certified copy of the administrative hearing transcript provided by the Government pursuant to 42 U.S.C. § 405(g).

decision in *Dixon v. Shalala,* 54 F.3d 1019 (2d Cir. 1995),[2] and plaintiff was found eligible for SSI benefits effective June 4, 1979, the date on which he first applied for SSI. (Tr. 18-19, 22-83.)

Plaintiff challenged the Social Security Administration's computation of his retroactive monthly SSI benefits for June 1979 through March 1992, claiming they were incorrectly reduced by one-third. A hearing was held on September 23, 2002, before Administrative Law Judge ("ALJ") Peter F. Crispino. (Tr.138-190.) Plaintiff, who was represented by an attorney, and his representative payee, Plaintiff's brother, Frank Giordano, testified at this hearing. Prior to taking testimony, Plaintiff's attorney acknowledged that Plaintiff had received the correct amount of monthly SSI benefits for months June 1979 through February 1983. *(*Tr. 13, 139-140.) Therefore, the monthly payments at issue were only those from March 1983 through March 1992. In March of 1983, Plaintiff lived with his father, mother and younger brother. (Tr. 119-28.) His mother died in 1987 (Tr. 144, 149) although the month she died is not clear from the record. It is also not clear from the record when Plaintiff's younger brother moved out of the house. The ALJ noted in his findings that Plaintiff paid his father either $215 or $250 per month in rent[3] and also contributed $82 in food stamps to the household. (Tr. 13.) The ALJ

---

[2] In *Dixon v. Shalala*, the Second Circuit affirmed the district court's opinion that the Social Security Administration's policy of refusing to consider whether different non-severe impairments, when combined together, resulted in a significant restriction of any basic work activities, violated the Social Security Act. 54 F.3d at 1038-39. The Secretary was ordered to identify and notify all class members, and to reopen and readjudicate the claims of those who responded. *Id.*

[3] The ALJ cites both numbers in his findings but does not specify which one he used to determine Plaintiff's pro rata share of the household expenses. (Tr. 12-14.)

based his findings on the monthly July 1992 household expenses as reported by Plaintiff and his father. (Tr. 13, Tr. 92-93, 95, 111-12.)

In a decision dated November 21, 2002, the ALJ found that from June 4, 1979 through March 16, 1992, Plaintiff's SSI income payments were properly subject to the "one-third reduction rule" and had been paid at the correct rate because Plaintiff had received unearned income in the form of support and maintenance during those months and was not paying his pro rata share of the household expenses. (Tr. 12.) The ALJ did not specify in this decision whether he determined the pro rata share by dividing the household expenses by four (the number of household members in 1983) or by two (the number of household members in 1992). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on August 16, 2005. (Tr. 2-5.) Plaintiff then filed the instant action.

II.     Discussion

   *A. Scope of Review*

Judicial review of SSI benefit determinations is governed by 42 U.S.C. § 1383(c)(3), which expressly incorporates the standards established by 42 U.S.C. § 405(g). In relevant part, § 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then her decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla[;] [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the

court must not look at the supporting evidence in isolation, but must view it in light of other evidence in the record that might detract from such a finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." *Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

The "substantial evidence" test applies only to the Commissioner's factual determinations; similar deference is not accorded to the Commissioner's legal conclusions or to the agency's compliance with applicable procedures mandated by statute or regulation. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("This deferential ["substantial evidence"] standard of review is inapplicable, however, to the [Commissioner's] conclusions of law.") Accordingly, the Commissioner's legal conclusions and compliance with applicable regulatory and statutory mandates are reviewed *de novo*.

### B. Regulatory Framework

The facts of this case must be understood within the complex regulatory framework of the Social Security Administration ("SSA"). The SSI program "provides benefits to aged, blind, or disabled individuals who meet the statutory income and resource limitations." *Gordon v. Shalala*, 55 F.3d 101, 101 (2d Cir. 1995) (citing U.S.C. §§ 1382 & 1382a and 20 C.F.R. § 416.1100 ), *cert denied,* 517 U.S. 1103 (1996). An SSI recipient is paid a flat monthly benefit, but that monthly benefit is reduced by the amount of non-excludable "income" which the recipient receives. 42 U.S.C. § 1382(b). "Income" is defined to include both earned and unearned income; "unearned income" includes "support and maintenance furnished in cash or kind." 42 U.S.C. § 1382a(a). There are special rules for valuing in-kind support and

maintenance, which is food or shelter that is received as unearned income.  *See* 20 C.F.R. § 416.1130(a).

In-kind support and maintenance is valued using one of two methods.  *See* 20 C.F.R. § 416.1130(c).  If an individual receives both food and shelter from someone in whose "household" he lives, the "one-third reduction rule" applies.  *See id.* §§ 416.1130(c), 416.1131. An individual is considered to be living in someone else's "household" if he does not pay a pro rata share of the household's expenses.  *Id.* §§ 416.1132-1133.  When the one-third reduction rule applies, the recipient's benefit payments are reduced by one-third because he is regarded as having income equal to one-third of the federal benefit rate.  *See* 42 U.S.C. § 1382a(a)(2)(A); 20 C.F.R. §§ 416.1130(c), 416.1131.  Any contributions the SSI recipient makes toward household expenses are ignored, unless those payments equal a pro rata share of the household's expenses, in which case the one-third reduction rule does not apply at all. 20 C.F.R. § 416.1133.

In other situations, the SSA presumes that the in-kind income is worth a maximum value that is one-third the recipient's federal benefit rate plus $20 (the general unallocated income exclusion described in 20 C.F.R. § 416.1124(c)(12)).  *See* 20 C.F.R. § 416.1140.  This is termed the presumed maximum value ("PMV").  *See id.*  This presumption can be rebutted by showing that the current market value of the in-kind support minus any payment made for it by the recipient, or the actual amount paid by someone else for the recipient, is lower than the presumed value.  *Id.*

In addition to the above analysis, the Second Circuit held in *Ruppert v. Bowen,* 871 F.2d 1172 (2d Cir. 1989) that further analysis is required when calculating SSI benefits.  The Court held that in order for a recipient's benefits to be reduced because of subsidized support in the form of reduced rent by a relative-landlord, he or she must receive an "actual economic benefit"

from the subsidy. *Id*. at 1180-81. Specifically, when the proportion of income that an SSI recipient spends on housing is "so great that it flies in the face of reality" to conclude that unearned income in the form of a rental subsidy is actually available to the recipient, that subsidy should simply be disregarded for the purpose of income calculation. *See id.* at 1180 *(quoting Jackson v. Schweiker,* 683 F.2d 1076, 1085 (7th Cir. 1982)).

In response to the *Ruppert* decision, the SSA adopted the so-called *Ruppert* Acquiescence Ruling, AR 90-2(2), 55 Fed. Reg. 28,947 (1990),[4] which explains how the SSA will evaluate whether an SSI recipient obtains an actual economic benefit from a rental subsidy. The *Ruppert* Acquiescence Ruling specifies that a recipient will not be treated as receiving an actual economic benefit from a rental subsidy when the monthly amount of rent required to be paid equals or exceeds the PMV. *Id*. If the required amount of rent is less than the PMV, the SSA will impute as in-kind support and maintenance the difference between the required amount of rent and either the presumed maximum value or the current market rental value, whichever is less.

The Second Circuit held in *Gordon* that the rule announced in Acquiescence Ruling 90-2(2) is a reasonable and acceptable standard for determining whether an individual has realized an "actual economic benefit." *See Gordon*, 55 F.3d at 104. In *Ellis v. Chater*, the Court held that because the SSA has defined a "rental subsidy" as a reduction in rent below market value by a relative or family member, the SSA may apply the *Ruppert* Acquiescence Ruling only to those tenants who receive a rent reduction from a relative-landlord. No. 94-6754, 1997 WL 177893, at *6 (S.D.N.Y. Apr. 11, 1997).

---

[4] Acquiescence Rulings explain how SSA will apply decisions of the United States Courts of Appeals to other cases in the same Circuit when those decisions are at variance with the SSA's national policies in adjudicating claims under the Act. *See* 20 C.F.R. § 416.1485.

### C. ALJ's Opinion

Plaintiff correctly argues that the ALJ ignored the Second Circuit's holding in *Ruppert* when making a determination regarding Plaintiff's benefits. In his decision, the ALJ noted that Plaintiff paid either $215 or $250 in rent each month to his father. (Tr. 13.) The ALJ also noted that Plaintiff contributed $82 in food stamps. (Tr. 13.) He then applied the "one-third reduction rule" to Plaintiff's benefits because he concluded that Plaintiff was living in his parents' household, was receiving in-kind support and maintenance in the form of both food and shelter from his family, and did not pay his pro rata share of the household expenses. (Tr. 12-14.)

The ALJ failed to consider that, before any valuation rules can be applied, the ALJ must first establish that the SSI recipient has actually acquired unearned income if the form of in-kind support and maintenance. *See Ruppert,* 871 F.2d at 1180-81; *see also Ragsdale v. Apfel,* 999 F. Supp. 814, 817 (E.D. Va. 1998). The ALJ, therefore, had to first determine whether Plaintiff was receiving an actual economic benefit from his living arrangement. *See Ruppert,* 871 F.2d at 1180-81. Plaintiff was paying rent each month to his father, a relative-landlord, and so Plaintiff's situation should have been analyzed under *Ruppert*. Instead of applying the one-third reduction rule to Plaintiff's benefits, the ALJ should have compared Plaintiff's monthly rental payments to the PMV for each of the months at issue.

The facts in *Gordon* are instructive here. Danielle Gordon, a spastic quadripeligic, lived with her mother and paid her mother $100 for rent and $100 for the separately designated purchase of food. *Gordon,* 55 F.3d at 103. The SSA reduced her monthly benefits by one-third because the SSA determined that she was living in her parents' household and receiving in-kind support and maintenance from them and not paying her pro rata share of the household expenses.

*Id.* However, after the promulgation of the *Ruppert* Acquiescence Ruling, Gordon's benefits were recalculated in accordance with *Ruppert* and she was awarded higher monthly benefits. *Id.* These higher benefits were based on a comparison of the value of her rental payments with the PMV. *Id.*

Here, as in *Gordon*, the ALJ should have applied the standard announced in the *Ruppert* Acquiescence Ruling to Plaintiff's benefits. The relevant data regarding the federal benefit rate and the PMV, included in the table below, can be found in the SSA's statistical reports, *available at* http://www.ssa.gov/policy/docs/statcomps/ssi_asr/2003/sect01.pdf. Assuming that Plaintiff paid his father $215 per month, the lower of the two values cited by the ALJ in the record, Plaintiff's rental payments to his father were still higher than the PMV for each of the months at issue.

| Month/Year | Federal Benefit Rate ("FBR") | 1/3 FBR + $20 = PMV | Giordano Monthly Rent |
|---|---|---|---|
| March-June 1983 | 284.30 | 114.77 | 215.00 |
| July-December 1983 | 304.30 | 121.10 | 215.00 |
| January - December 1984 | 314.00 | 124.67 | 215.00 |
| January-December 1985 | 325.00 | 128.33 | 215.00 |
| January-December 1986 | 336.00 | 132.00 | 215.00 |
| January-December 1987 | 340.00 | 133.00 | 215.00 |
| January-December 1988 | 354.00 | 138.00 | 215.00 |
| January-December 1989 | 368.00 | 142.67 | 215.00 |
| January-December 1990 | 386.00 | 148.67 | 215.00 |
| January-December 1991 | 407.00 | 155.67 | 215.00 |

| | | | |
|---|---|---|---|
| January-March 1992 | 422.00 | 160.67 | 215.00 |

Because Plaintiff's rental payments to his father were higher than the PMV in every year from 1983 through1992, under the terms of the *Ruppert* Acquiescence Ruling, Plaintiff did not receive an "actual economic benefit" from living with his father and so no in-kind support and maintenance can be imputed to him due to the fact that he was living in his parents' home.

The Commissioner's arguments as to why *Ruppert* should not apply are not credible. She claims that Plaintiff did not pay rent to a relative, which is contradicted by the ALJ's own findings which state that Plaintiff made monthly rental payments to his father. (Tr. 13.) The Commissioner also argues that it is possible that Plaintiff was paying fair market value for the housing and therefore did not receive a rental subsidy. However, an SSI recipient is not receiving in-kind income in the form of shelter if he is paying rent in the amount charged under a business arrangement and a business arrangement exists when the required monthly rent equals the current market value. 20 C.F.R. § 416.1130(b). This argument leads to the same conclusion as the application of *Ruppert* does, which is that Plaintiff was not receiving in-kind support and maintenance in the form of shelter from his family.

### D. Remand

Plaintiff's benefit payments must be recalculated in light of the fact that the ALJ failed to apply the applicable law of the Circuit to Plaintiff's facts. Under the *Ruppert* Acquiescence Ruling, Plaintiff received no "actual economic benefit" from living with his parents. Plaintiff

was not receiving in-kind income in the form of shelter from his parents, and therefore, the one-third reduction rule should not have been applied to his monthly benefit payments.

Plaintiff's request for judgment on the pleadings must be denied, however, because the record is incomplete as to whether Plaintiff received any other in-kind support and maintenance from his parents while he was living with them. When, as here, the Commissioner has failed to provide a full and fair hearing, make explicit findings, or correctly apply the law and regulations, remand is appropriate. *See Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999).

On remand, the only issue left to determine is how much, if any, in-kind support and maintenance Plaintiff received from his parents in the form of food. The ALJ found that Plaintiff gave his father food stamps in the amount of $82.00 towards the monthly food expense of $450.00. (Tr. 12-14.) However, as the Commissioner conceded in her motion for remand, the ALJ based his findings only on the July 1992 monthly household expenses as reported by Plaintiff, and failed to develop the record as to the household expenses or costs of food for the months between March 1983 and March 1992. The ALJ will need to reassess Plaintiff's food costs, to the extent possible, and apply the PMV rule to any in-kind support and maintenance Plaintiff received from his parents in the form of food. The fact that Plaintiff received food stamps during that time period should be taken into account, along with any other available evidence Plaintiff puts forth.

In ordering a remand, the Court is mindful of the significant amount of time that it has taken this case to make its way through the administrative process. Notably, Plaintiff is trying to collect benefits that were due to him in March of 1983. The Second Circuit recently expressed its displeasure with the "often painfully slow process by which disability determinations are made," *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), and recognized that, in cases where

the delay is particularly egregious, "a time limit is imperative." *Id*. In accordance with that command, and to insure that remand does not result in additional undue delay, the Court directs that further proceedings before an ALJ be completed within 120 days of the issuance of this order.

III.    Conclusion

For the reasons set forth above, the Commissioner's decision is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and consistent with this opinion, to determine how much, if any, in-kind support and maintenance Plaintiff received from his parents in the form of food.

Plaintiff's request for fees is denied without prejudice. If Plaintiff wishes to seek attorney's fees, he must submit an application for attorney's fees within thirty (30) days of the date of this Order. The Clerk of Court shall enter judgment.

SO ORDERED.

/s/
SANDRA L. TOWNES
United States District Judge

Dated: September 29, 2006
       Brooklyn, NY